COLORITYPE CO. v. WILLIAMS.

(Circuit Court of Appeals, Second Circuit. January 7, 1897.)

1. REVIEW ON ERROR—VERDICT—WEIGHT OF EVIDENCE.

The circuit court of appeals. cannot set aside a general verdict on the ground that it was against the weight of evidence, or upon a guess as to the mental processes by which the jury reach the conclusion expressed therein.

2. LANDLORD AND TENANT—INTERPRETATION OF LEASE—MODIFICATION.

A lease made in August demised the four upper lofts of a building then in course of erection for five years from February 1st following. In September

the parties made a further written agreement, whereby the lessor stipulated to have the premises ready for occupancy on February 1st, excepting certain minor details, and that he would give the lessees possession at as early a date before February 1st as he could have the lofts in suitable condition; the rent, however, to commence February 1st, "or as soon thereafter as the building is completed." If the premises were not ready for occupancy on that day, the lessor was to forfeit $50 a day thereafter, etc. *Held*, that this did not so modify the lease as that the lessee would not be liable for rent, and would be entitled to the daily penalty, until the whole building was completed, but merely bound him to have the leased lofts ready on February 1st, except the minor details mentioned.

3. SAME—PAROL EVIDENCE.
   *Held*, further, that there was no such ambiguity in the contract as would warrant the introduction of prior oral negotiations or understandings.

4. REVIEW ON ERROR—HARMLESS ERROR.
   A lease of part of a building then in course of construction required "it to be fireproof." In an action for rent, etc., where defendant set up that the building was not fireproof, plaintiff, who was an architect, testifying in his own behalf, after describing the construction of the building in this respect, was allowed to state that "that mode of construction is commonly called fireproof" in his profession. *Held*, that if this was error, it was rendered harmless by the subsequent introduction of the building law containing the definition of a fireproof building, together with evidence by the plaintiff, without objection or contradiction, that the building was so constructed.

5. TESTIMONY OF PARTIES—REQUESTS TO CHARGE.
   A requested charge, directing the jury to remember that plaintiff "is the most interested party in the controversy," that they are to receive his testimony with caution, and are empowered "to reject any evidence which is uncorroborated, even though it be uncontradicted," is properly refused.

6. REQUESTS TO CHARGE—ORAL MODIFICATION.
   Defendant submitted a written request, marked "E," containing manifestly objectionable clauses, and after the general charge orally asked the court to give his request, marked "E," repeating it with slight verbal changes, which, however, much modified its objectionable features. *Held*, that the court was warranted in inferring that he referred to the request as written, and in refusing to give it.

This is a writ of error, brought by the plaintiff in error, who was defendant below, to review a judgment in favor of defendant in error (plaintiff below), entered in the circuit court, Southern district of New York, upon the verdict of a jury.

Williams, the plaintiff, was an architect and builder, and the owner of the premises at No. 32 Lafayette Place, in the city of New York. He constructed a building thereon, and leased the four upper floors to the defendant. The lease was made while the building was in process of erection, and Williams agreed to complete it in accordance with certain plans agreed upon between the parties. He also, at the request of defendant, and independent of the written contract, did a considerable amount of work on the floors so let in order to adapt them to the requirements of defendant's business. This action is brought for rent unpaid under the lease for the months of February and March, 1894, for the value of this special work done at defendant's request, and for services in running the steam plant in the building. This last item was disallowed by the court, and, since plaintiff below sued out no writ of error, is not before this court. The defendant did not dispute the charge for special work, except as to about $1,460, upon which contention it prevailed at the trial. Plaintiff has not sought to review the decision as to this $1,460, and that item is not before the court. The defendant denied that any rent for the period sued for became due under the lease as modified by a certain collateral agreement. It also set up five counterclaims. The first ($75 for steam power furnished to plaintiff after the period sued for) was allowed, and is not here for review. The third (for damages by reason of improper construction of the skylight) was left to the jury to decide. It is conceded that the amount of this counterclaim, if allowed, was $71.50, and

the jury were so instructed. The second counterclaim (for cost of moving radiators alleged to have been improperly placed) and the fourth (for excess of fire insurance premiums claimed to have been the consequence of a failure to make the building fireproof) were disallowed. The fifth counterclaim was for damages for delay in completing the building under a penalty clause contained in the agreement between the parties. This counterclaim also was submitted to the jury. Inasmuch as it was admitted that plaintiff was entitled to recover $3,574.19 for the extra work, and only $146.50 was to be deducted for the steam and the skylight, and the plaintiff conceded only $250 to be due from him under the penalty clause, and insisted upon an additional sum for rent, it is manifest from their verdict of only $2,548.69 that the jury found against the plaintiff both on the question of rent and on that of penalty for delay in completing.

J. Aspinwall Hodge, for plaintiff in error.
David B. Ogden, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. It will be seen from the above statement of facts that a part only of the questions which were litigated in the circuit court are presented here for review. The several objections to the judgment which have been submitted on the argument will be separately considered.

The court charged the jury that "by the terms of the contract between the parties at all times after February 1st the plaintiff was either bound to pay the stipulated penalty or was entitled to receive the stipulated rent; and the date when the penalty ceased and the rent began was the same." Such objections as have been urged to this part of the charge as not correctly construing the contract between the parties will be considered hereafter. It is quoted here as introductory to the first point of plaintiff in error, in which it is contended that the verdict cannot be sustained even if it is held that the contract was properly construed by the trial justice. Plaintiff conceded that under such construction the building was not completed ready for occupancy on February 1st, the date when rent was to begin, provided plaintiff had fulfilled his covenants, but contended that it was so completed on February 6th. Defendant contended that it was not so completed as to terminate the penalty clause, and make defendant liable for rent, until April 2d. It is urged here that the court should have instructed the jury to decide this contention in favor of the defendant. The record, however, shows that there was a conflict of testimony as to the day when the building was completed within the terms of the contract as the court construed them. It was not error, therefore, to leave that question to the jury; on the contrary, it would have been error to take it from them. The defendant, however, seeks to show by an analysis of the verdict that it is to be assumed that the jury fixed upon some day other than February 6th, or April 2d, which supposed date the evidence does not sustain. That question is not before this court. If the verdict is supposed to be against the weight of evidence, that point should be raised by motion for a new trial; and the decision of the trial judge on that point is not reviewable by writ of error in the federal courts. Upon conflicting evidence the question was submitted to

the jury—properly so submitted, since it is apparent that the evidence was conflicting—with instructions to bring in a general verdict; and their general verdict upon such conflicting evidence, not having been set aside by the court, must stand here as a finding of fact that at some date subsequent to February 6th the building was completed, the running of the penalty clause stopped, and liability for rent incurred. If defendant wished to have the jury fix that date specifically, it should have asked for a special verdict upon a question properly framed. This court cannot set aside the general verdict upon a guess as to what was the mental process by which the jury reached the conclusion which they have expressed therein. Moreover, we find no assignment of error which covers this point.

The main question in the case is whether the trial judge correctly construed the contract between the parties, and properly instructed the jury thereon. The lease was executed August 30, 1893. It demised to defendant the four upper lofts of the building known as "No. 32 Lafayette Place" for the term of five years from February 1, 1894; the lessee covenanting to pay $15,000 a year, in equal monthly payments on the 1st day of each month. Subsequently, on September 7, 1893, the parties entered into a further written agreement, in substance as follows: It recites that defendant has executed the lease, and obligated itself, under the covenants thereof, upon the express condition that all the agreements hereinafter in the agreement contained shall be fully performed by plaintiff. Williams covenants and agrees that the building now in course of erection shall be practically completed in compliance with the plans, * * * which * * * provide for the erection of a substantial eight story and basement fireproof building, * * * and on the top loft a suitable skylight or skylights, providing the same are acceptable to * * * the building department, * * * and not objectionable to the board of fire underwriters. Also that the building is to be furnished with freight and passenger elevators, etc. Williams further stipulated that:

"He will have the premises ready for occupancy by defendant on or before February 1, 1894, excepting, however, such minor details as gas fitting, steam fittings, painting, and the various nonessential and minor details of the said buildings as cannot be completed on or before February 1, 1894.

"*That he agrees to give the [defendant] possession of the premises leased to them at as early a date before the first day of February, 1894, as he can have the lofts in suitable condition ready for occupancy, or for them to place their machinery in; but the rent to commence on February 1, 1894, or as soon thereafter as the building is completed.*

"That in case the building is not ready for occupancy on the first day of February, 1894, the measure of damages shall be a forfeiture of fifty dollars ($50.00) per day during the month of February, and one hundred dollars ($100.00) per day during the month of March and thereafter.

"But it is covenanted that, in the event of the said John T. Williams being prevented from completing the said building on the first day of February, 1894, or later, by reason of the occurrence of a strike which shall prevent the completion of the said premises on or after that date, he shall be exonerated and held blameless of and from any or all liability by reason of the delay in the completion of said building caused by said strike."

The defendant has argued at great length that this agreement so modified the original lease that, although the premises leased might be ready for occupancy as that phrase is defined in the agreement, on February 1st, or some subsequent day, there would be no liability for rent, and defendant would be entitled to exact the overtime penalty until the whole building was entirely completed. There is no force in this contention. The italicized paragraph above quoted provides for the single case where the defendant is put into possession before the beginning of the lease. It is a parenthetical clause in no wise affecting the principal part of the agreement, which provides in plain language that plaintiff will have the premises ready for occupancy, excepting the minor details, on February 1st; that, if not ready for occupancy then, the specified daily penalty shall be paid, unless the failure was due to the occurrence of a strike. The trial judge thus construed the contract between the parties as made out by the lease and agreement, and charged the jury accordingly. In this there was no error. Moreover, the contract is so plain and unambiguous upon its face that he correctly refused to admit evidence of oral conversations and negotiations prior to the making of the contract, which were offered upon the theory that they would elucidate alleged obscurities in the contract which, so far as we can see, do not exist. This disposes of most of the 46 assignments of error. They are too numerous to review in detail.

As to the second assignment of error which is referred to in the brief under this point, it is sufficient to say that the objection to the question put to the plaintiff: "Did you at any time agree with defendants that that building should be complete so that they could * * * commence * * * business there by February?"—did not state the ground now relied upon. The only point raised was that, if such agreement was in writing, the writing was the best evidence.

Upon the point that the court erred in refusing to charge the jury that they must find for the defendant on the counterclaim of $71.50 for cost of alterations to the skylight, it is sufficient to say that, in view of the testimony of defendant's foreman of the engraving department that before alterations "the skylight was all right," there was sufficient conflict of evidence to send that question to the jury. The evidence excluded as to the capacity of the floor to sustain the weight of defendant's presses was not so restricted as to bring the charge of alleged failure in that respect within the specific terms of the contract, viz. "five hundred pounds per square foot, as calculated by the formulas in use by [plaintiff]." The exclusion was not error. The judge also correctly excluded the testimony offered as to the location of the steam radiators on the eighth floor. There was nothing in the contract about putting the radiators in any particular place, and no direction was given to the plaintiff to put them in one place rather than another.

It is contended that there was error in allowing the plaintiff, after describing how the building was constructed with reference to security against fire, to state that "that mode of construction is

commonly called 'fireproof' in his profession." We are not inclined to sustain this contention; but, if it were error to admit the evidence, it was harmless error. Subsequently the building law containing the definition of a fireproof building was put in, and it was proved by the evidence of plaintiff, without contradiction and without objection, that the building was thus constructed. Upon this state of the proof, with nothing to show that the building was not in fact fireproof, any evidence as to what premiums defendant paid for insurance was wholly irrelevant and immaterial, and was properly excluded. The point is now made that the plaintiff's own testimony to the mode of construction was the only evidence on that point; that "it was not sufficient; it was improper; its introduction is reversible error." In view of the fact that the question which elicited the evidence was not objected to, nor any motion made to strike out the answer, and of the further fact that the judge charged "there was no adequate evidence that the building was not fireproof," to which there was no exception, it is a frivolous waste of time to raise such a point in the appellate court.

In defendant's replying brief there occurs this paragraph:

"It was incumbent upon the plaintiff to prove that the building was fireproof. If he did this, he did it solely by his own testimony, as pointed out by the defendant in error himself under this point. Manifestly, then, it was a question to be submitted to the jury, and not taken away from them, as it was, under the exception of the plaintiff in error."

Diligent search of the record has failed to disclose any exception to the court's action in taking this question from the jury. Since counsel should know what exceptions are preserved in a record and what are not, it is to be hoped that hereafter greater care will be exercised in citing them. It is an imposition upon the court to be constrained to go over the whole record, page by page, in hopeless search for an alleged exception which does not exist save in the exuberant statements of the brief.

The only remaining point argued upon the brief arises upon a refusal of the court to charge one of defendant's requests. Before the summing up, defendant, conformably to the practice of the circuit court, submitted written requests to charge. There were 30 of them in all. Among them was the following:

"E. In weighing the evidence the jury are to remember that the plaintiff is the most interested party in the controversy. They are to receive his evidence, therefore, with caution, as being that of a partial witness; and they are empowered to reject any evidence which is uncorroborated, even though it be uncontradicted."

Manifestly, such a charge would be improper. To instruct the jury that the plaintiff is more interested in a controversy than is the defendant, would be preposterous. The judge, naturally enough, did not embody this proposition in his colloquial charge: At the close of the charge defendant excepted to certain specified parts of it, and then the record proceeds as follows (defendant's counsel loquitur):

"I ask your honor to charge the defendant's request marked 'E': 'In weighing the evidence the jury are to remember that the plaintiff is an interested party

in the controversy. They are to receive his evidence, therefore, with caution, as being that of a partial witness; and they are empowered to reject any evidence given by him which is uncorroborated, even though it be not contradicted.' The Court: I decline to charge that whole paragraph. (Exception by defendant.)"

It will be observed that two changes, brief in verbiage, but extensive in scope, were made in the oral restatement of this written request. The words "given by him" are inserted near the close of the sentence, so that it no longer instructs the jury that they may reject "any uncorroborated evidence," but only uncorroborated evidence of the interested party. The words "the most interested" are changed to "an interested," so that the request is no longer obnoxious to the particular objection above referred to. Now, these changes, important though they are in their effect, are trifling in verbal expression, and not likely to attract attention upon an oral repetition of the modified request. When the trial judge was requested after the colloquium to charge "the defendant's request marked 'E,'" he would naturally suppose that his attention was directed to the marked request with which he had been furnished, and which he had already examined. If defendant wished a ruling upon some modification of that marked request, which he thus brought for the first time to the court's attention, he should have indicated the particulars in which he wished to modify it. Not having done so, his exception cannot avail him.

The judgment of the circuit court is affirmed.